```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION


UNITED STATES OF AMERICA,        )
                                 )
            Plaintiff,           )
                                 )
      v.                         )     No. 4:06 CR 26 CAS
                                 )                    DDN
SHARON OTEY,                     )
                                 )
            Defendant.           )
```

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This action is before the Court upon the pretrial motions of the parties which were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on March 30, 2006.

Defendant Sharon Otey has moved to suppress evidence and statements (Doc. 17). From the evidence adduced at the hearing, the undersigned makes the following findings of fact and conclusions of law:

**FACTS**

1. In early May 2002, Julia Bowen, an investigator with the Missouri state Office of Special Investigators, was assigned to investigate information that Complete Care of America International, a home health care agency, was employing two people as nurses who were not and never had been nurses. The information that Ms. Bowen received indicated that one of these persons was defendant Sharon Otey. After receiving the case for investigation, Ms. Bowen attempted to contact Ms. Otey by telephoning her. Ms. Bowen left voice messages on Ms. Otey's telephone answering machine, but was unsuccessful in reaching Ms. Otey in this way.

2. On May 9, 2002, accompanied by a community health care nurse, Ms. Bowen drove to Ms. Otey's home at 536 Eiler Court in an effort to meet with her. After they arrived, they walked up to the front door and Ms. Bowen knocked on the front door. The front door was largely made of glass and Ms. Bowen could see through the glass that a woman stood

inside the home facing the front door.  The woman appeared to back away from the door and asked, "Who is it?"  Ms. Bowen identified herself and said she was there to see Sharon Otey.  The woman said, "She's not here."  Ms. Bowen said, "I need to speak with her.  I left a number of messages."  The woman inside the door then walked away.  Ms. Bowen knocked on the door again.  The woman inside the home then said that she was going to call the police.  At that time, Ms. Bowen returned to her vehicle and examined a Missouri driver's license photograph of Sharon Otey and determined that the woman inside the door was Sharon Otey.  Ms. Bowen also observed an automobile parked in front of the residence and determined from its license plate as being registered to Ms. Otey.  Ms. Bowen looked through the window inside the automobile.[1]  Ms. Bowen then returned to the front door and, after handwriting "Please Call Me" on the back of her business card, left the business card at the front door. While she was at the residence, Ms. Bowen made no threats or promises to anyone there.  At no time did the woman inside the residence open the front door of the residence and at no time did Ms. Bowen or the accompanying nurse enter the residence.

     3.    Thereafter, Ms. Bowen had a telephone conversation with Sharon Otey.  In that conversation, at one point Ms. Otey said she did not want to talk with her or answer any of her questions and another time in that conversation Ms. Otey said she would meet with Ms. Bowen in a restaurant on Kingshighway in the City of St. Louis.  In accordance with this agreement, Ms. Bowen went to the restaurant and waited there for an hour and 45 minutes, without Otey showing up.  Ms. Bowen had no further contact with Ms. Otey.

     4.    On July 10, 2002, Walter Miller, then an investigator for the Missouri State Board of Nursing, conducted a telephone interview of Sharon Otey which he recorded without the knowledge of Ms. Otey.  Gov.

---

[1] At the hearing, government counsel stated that any information Ms. Bowen learned from looking into the automobile would not be offered by the government at its case-in-chief at trial.

Ex. 2.[2] During the recorded conversation, Mr. Miller indicated that he was conducting a criminal investigation and Ms. Otey made many oral statements about her involvement with the home health care entity under investigation. Mr. Miller attempted to arrange a face-to-face meeting with Ms. Otey, but she refused to do so. During the conversation, Mr. Miller asked Ms. Otey whether she had an attorney. She responded by saying that she had an attorney. Mr. Miller then asked who the attorney was. Ms. Otey responded, "I am not at liberty to say." Mr. Miller then told her to have her attorney call him. At that time the recorded telephone conversation ended. At no time during the recorded conversation did it appear that Ms. Otey was being coerced into making any statement.

   5. On January 18, 2006, Federal Bureau of Investigation Special Agents James A. Appelbaum and Holly Tischener arrested defendant Sharon Otey following the return of the indictment in this case on January 12, 2006. On that day he went to her place of employment at the office of the May Department Stores. He had earlier telephoned the Human Relations Office at May to confirm that Ms. Otey was scheduled to work that day. After he arrived at the company, he was shown to an office and Ms. Otey was brought to that office.

   6. Once she entered the office at approximately 9:55 a.m., Agent Appelbaum and Agent Tischener identified themselves. Then Agent Appelbaum told Ms. Otey that she was under arrest and that he would like to speak with her. He then orally advised her of her constitutional rights to remain silent and to counsel. She orally waived her rights. Then, Agent Appelbaum handed Ms. Otey a Warning and Waiver of Rights form, which she read and signed thereby expressly waiving her rights to remain silent and to counsel. Gov. Ex. 1. Thereafter, Ms. Otey was very cooperative with the agents and answered their questions for approximately 55 minutes. At no time during the interview did Ms. Otey ask for an attorney or ask to remain silent. She was calm and pleasant

---

[2] A cassette copy of the audio recorded interview was received into evidence by the court as Government Ex. 2. After the hearing, *in camera* without the presence of the parties or their counsel, the undersigned listened to the recording which lasted approximately 16 minutes.

throughout the interview. After the interview, the agents took Ms. Otey to their car for transportation to the FBI office in St. Louis where she would be processed. En route to the FBI office Otey made oral statements to the agents without coercion.

## DISCUSSION

The issue before the court is whether or not defendant Otey's statements to Ms. Bowen, Mr. Miller, or Agent Appelbaum should be suppressed. Clearly, those statements should not be suppressed.

The government has the burden of establishing the constitutional admissibility of a defendant's statements by a preponderance of the evidence. Colorado v. Connelly, 479 U.S. 157, 169 (1986); Lego v. Twomey, 404 U.S. 477, 489 (1972). The admissibility of a defendant's statements depends upon whether the statements are constitutionally voluntary, Colorado v. Connelly, 479 U.S. at 163-67; and, when the statements are made during police interrogation while the defendant was in custody, whether the defendant had been advised of her rights, as prescribed by Miranda v. Arizona, 384 U.S. 436 (1966), and, if so, whether the defendant knowingly and voluntarily waived the Miranda rights, North Carolina v. Butler, 441 U.S. 369, 373, 375-76 (1979).

The admissibility of statements does not require that they be preceded by an advise of rights, if the person who made the statements was not in custody or not the subject of interrogation when the statements were made. Miranda, 384 U.S. at 444-45, 467-68, 478. In the case at bar, defendant Otey was not advised of her Miranda rights by either Ms. Bowen or Mr. Miller. However, none of her statements were made while she was in custody. Her statements were made from inside her home with the front door closed and from some location out of the presence of Mr. Miller. Therefore, the only issue is whether her statements were voluntary.

Statements are constitutionally involuntary, if they are the result of government overreaching, such as mental or physical coercion, deception, or intimidation. Colorado v. Connelly, 479 U.S. at 169-70; Moran v. Burbine, 475 U.S. 412, 421 (1986); United States v. Jordan, 150 F.3d 895, 898 (8th Cir. 1998); United States v. Goudreau, 854 F.2d 1097,

1099 (8th Cir. 1988). Regardless of the mental condition of the defendant, statements are not constitutionally involuntary without improper government action. See Connelly, 479 U.S. at 169-70; United States v. Goudreau, 854 F.2d 1097, 1099 (8th Cir. 1988). In the case at bar, no evidence indicated that either Ms. Bowen or Mr. Miller acted in any fashion to overbear defendant's ability to not cooperate and make a statement. In fact, Ms. Otey determined not to meet with Ms. Bowen after an agreement to meet had been made and Ms. Otey refused to meet with Mr. Miller and refused to tell him who her attorney was.

The oral statements made to the FBI agents on January 18, 2006, were made after she was arrested and during interrogation. However, the record is clear that before defendant made these statements, she was advised of her Miranda rights, expressly waived them, and thereafter made oral statements without coercion. These statements should not be suppressed.

Whereupon,

**IT IS HEREBY RECOMMENDED** that the motion of defendant to suppress evidence and statements (Doc. 17) be denied.

The parties are advised they have until May 3, 2006,[3] to file written objections to this Report and Recommendation. The failure to file objections may result in a waiver of the right to appeal issues of fact.

/s/ David D. Noce

**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on April 21, 2006.

---

[3]This is 11 calendar days from April 21, 2006. See Federal Rule of Criminal Procedure 45(a)(2).